**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: Samuel B. Millinghausen, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bky. No. 24-12183 (PMM) |
| | : | |
| | : | |
| Legal Access Plans, LLC, Karen M. Drake, | : | |
| Robert L. Hyslop, Jr., Theresa M. Hyslop, | : | |
| Joy A. Capka, Maryann DiRenzo, | : | |
| Legal Access Management Group LLC, | : | |
| The LegalEase Group, Legal Access Plans, | : | |
| Inc., Legal Access Consulting, LLC d/b/a | : | |
| Legal Plans USA, Robert L. Heston, Jr., | : | |
| Peter Pride, Karen Henkel, and John Doe Four: | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 24-00140 (PMM) |
| Samuel B. Millinghausen, | : | |
| | : | |
| Defendant. | : | |

# O P I N I O N
## I. INTRODUCTION

The above-captioned 14 plaintiffs (the "Plaintiffs") filed an Adversary Complaint in this chapter 7 bankruptcy seeking to deny the dischargeability of a sizeable debt and to hold the debtor, Samuel B. Millinghausen (the "Debtor" or "Millinghausen"), liable for fees and costs awarded in a pre-petition arbitration proceeding. The history of the dispute between the parties is long and contentious. But determination of the Debtor's Motion to Dismiss the Complaint (the "Motion") doesn't depend on any of that history. Rather, the Motion presents a strictly procedural question: should the Court use its equitable power to extend the deadline (missed by the Plaintiffs) to file a nondischargeability cause of action, given that the case docket states an incorrect deadline for such a filing? After careful consideration of the law and arguments, and for reasons discussed below, I

answer that question in the negative. Because repleading would be futile, the Motion to Dismiss will be granted with prejudice.

## II. FACTUAL BACKGROUND

Millinghausen is an attorney licensed in Pennsylvania and owner of the Law Offices of Samuel W.B. Millinghausen, III in Ambler. On January 27, 2006, the Debtor entered into a contract with Plaintiff Legal Access Plans—a company that offers legal referrals to its members.

In 2011 and 2012, the Debtor filed lawsuits against Legal Access Plans and against certain potential clients, alleging, *inter alia*, defamation and slander. The lawsuits stemmed from Legal Access' November 25, 2010 termination of the Debtor's contract and related events. Complaint, Ex. A at 12. Upon review of lower court rulings, on April 14, 2014, the Superior Court of Pennsylvania remanded each suit to arbitration, which the Court held was contemplated by the contract between the parties. Complaint, Ex. A, B. Appeal of that decision was denied. Complaint, Ex. C.

On January 15, 2019, the Plaintiffs were awarded an arbitration judgment (the "Judgment") in the amount of $381,292.50 (consisting of $355,000.00 in attorney's fees and $26,292.50 in costs). Complaint, Ex. D. The Judgment was awarded due to the Debtor's actions in resisting arbitration and presenting unsubstantiated positions; the arbitrator found that Millinghausen had multiplied proceedings through his "obdurate insistence on presenting and renewing multiple unfounded positions and motions." Id. at 5. Further, the arbitrator found no evidence of defamation against the Debtor. Millinghausen's efforts to overturn the Judgment were unsuccessful. See Complaint, Ex. E, F, G, H, I, J, K, L. Pursuant to the most recent opinion of the Pennsylvania Superior Court, issued July 15, 2022, the Debtor was again denied the opportunity to relitigate the Judgment and the Plaintiffs were granted additional attorney's

fees and costs (to be determined by the trial court).  Complaint, Ex. H.  Millinghausen's requests for an appeal and reconsideration of that ruling were denied.  Complaint, Ex. I, J, K, L.

### III. PROCEDURAL HISTORY

On June 25, 2024, the Debtor filed for chapter 7 bankruptcy protection.  The Debtor's schedule E/F lists an unsecured judgment debt owed to the Plaintiffs in the amount of $455,709.77.

The §341 meeting of creditors was held on July 24, 2024, continued to August 14, 2024, and finally concluded on September 11, 2024.  Doc. #'s 5, 12, 16 in the main case.  As discussed below, the July 24, 2024 first meeting of creditors meant that the deadline for filing nondischargeability causes of action was September 23, 2024 (60 days later).  F.R.B.P. 4007(c).  The Plaintiffs received notice of the §341 meeting.  Doc. #6 in the main case; Schedule E/F; Motion at 2.  The Plaintiffs' counsel attended the §341 meeting, during which a possible extension of the deadline was discussed by the chapter 7 trustee and Debtor's counsel.  Response at 2.

On August 22, 2024, the Court entered an Order (doc. #19 in the main case, the "Consent Order") which states (second emphasis added):

> upon agreement between the Chapter 7 Trustee, Lynn E. Feldman, and the Debtor, through Debtor's undersigned counsel: IT IS HEREBY AGREED that **the time for the U.S. Trustee or Chapter 7 Trustee** to (1) file a Motion to dismiss under section 707(b) and/or (2) file a Complaint to Deny Discharge under section 727 and/or 523, is hereby extended to November 23, 2024.

At some point after the entry of the Consent Order, the upper right heading of the docket in the Debtor's bankruptcy case was changed to read as follows: "[d]eadline for objecting to discharge: 11/23/24."  The docket did not, and does not, specify that this extended deadline only applies to the U.S. and the chapter 7 trustees.

This Adversary Proceeding was filed by the Plaintiffs on November 22, 2024. The

3

Complaint seeks to hold the Judgment nondischargeable pursuant to 11 U.S.C. §523(a)(6).

On December 5, 2024, the Debtor was discharged. On December 12, 2024, the Defendant filed the pending Motion to Dismiss (doc. #4). The Plaintiffs filed a Response (doc. #10) to which the Defendant replied (doc. #11).

### IV. THE PARTIES' ARGUMENTS

The Debtor's straightforward argument is that the Plaintiffs, who had timely notice of the meeting of creditors and corresponding deadline to file a complaint objecting to discharge, missed the September 23, 2024 deadline by nearly two (2) months. The Plaintiffs failed to file a motion for an extension and were not included in or affected by the Consent Order. There are no extraordinary circumstances which would allow the Court to extend the deadline, and the Plaintiffs' reliance on a docket notation, as opposed to a Court Order, is unreasonable. Thus, according to the Debtor, the Plaintiffs "have no excuse for their failure to timely file the instant Complaint." Memorandum at 10.

The Plaintiffs do not contest that they missed the deadline to file a nondischargeability cause of action. Rather, they point to the fact that the docket lists the deadline for objecting to discharge as November 23, 2024 and assert that their reliance on this information was reasonable. Response, Ex. B. The Plaintiffs suggest that the Court "use its equitable power to cure" the erroneous deadline listed on the docket. Response at 6. The Plaintiffs further assert that dismissal is not appropriate because the alleged statutory defect isn't apparent on the face of the Complaint. Response at 6, 12.

4

## V.  STANDARD ON A MOTION TO DISMISS

The standard on a motion to dismiss is well known.  Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the factual allegations of the complaint.  The Defendant is entitled to relief only if the complaint does not state a claim that is plausible on its face.

In determining a motion to dismiss, the court uses its common sense and judicial experience.  The court is required to accept as true all allegations in the complaint and all reasonable inferences drawn from them.  Allegations that are mere conclusions are not entitled to the assumption of truth.  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); In re Island View Crossing II, L.P., 604 B.R. 181, 189 (Bankr. E.D. Pa. 2019).  Rule 12(b)(6) requires the Court to accept as true all well-pleaded factual allegations of the Complaint, construe disputed facts in a light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the Complaint, the Plaintiff may be entitled to relief. In re MBMK Prop. Holdings, LLC, 2024 WL 3167232, at *7 (Bankr. E.D. Pa. June 25, 2024). The Supreme Court has explained that a claim must have "facial plausibility," which is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is not facially plausible if it is not timely filed and the debtor timely raises that defense.  In re Withrow, 570 B.R. 452, 455 (Bankr. N.D. Ga. 2017).

An allegation of the untimeliness of a complaint may be raised pursuant to section 12(b)(6) if the limitations bar is apparent on the face of the complaint.  In re Pocius, 499 B.R. 472, 473 n.2 (Bankr. E.D. Pa. 2013).

Upon dismissal of a complaint, leave to file an amended complaint should be granted unless an amendment would be futile.  Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004).

5

## VI. BACKGROUND LAW

### A. Bankruptcy Rules

The Bankruptcy Code and Rules delineate the deadline for creditors to file a nondischargeability complaint. A complaint to determine whether a debt is dischargeable must be filed within 60 days after the first date set for the § 341(a) meeting of creditors. F.R.B.P. 4007(c). On a party-in-interest's motion filed before the time expires, after notice and a hearing and for cause, the court may extend the time to file. Id.; see also In re Mazik, 592 B.R. 604, 610-11 (Bankr. E.D. Pa. 2018). Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(1) "the clerk or the court's designee must give the debtor, the trustee, all creditors, and all indenture trustees at least 21 days' notice by mail of" the §341 meeting of creditors. F.R.B.P. 2002(a)(1).

The time to object to the discharge of the debtor or to the dischargeability of debt begins to run on the original §341 meeting date and the deadline does not change, even if the meeting is continued. 9 Collier on Bankruptcy ¶2002.02[6][a] (16th ed. 2025); In re Rhodes, 61 B.R. 626, 629 (B.A.P. 9th Cir. 1986). In Taylor v. Freeland & Kronz, the Supreme Court held that the 30-day deadline for objecting to a debtor's exemptions pursuant to F.R.B.P. 4003(b) must be strictly enforced. 503 U.S. 638, 644 (1992). "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." Id.

### B. Can this Deadline be Moved for Equitable Reasons?

As indicated by the law cited above, the deadline to file a complaint objecting to discharge can only be extended if a motion is granted prior to the deadline; excusable neglect does not apply to Rule 4007. F.R.B.P 9006(b)(3); In re Lopresti, 397 B.R. 62, 66 (Bankr. N.D. Ill. 2008).

The relevant deadline may be extended for equitable reasons pursuant to §105(a) of the Code, which allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A bankruptcy court may use its authority under §105 to correct certain mistakes. See In re Anwiler, 958 F.2d 925, 928 (9th Cir. 1992), as amended on denial of reh'g (Apr. 8, 1992) (citing cases); In re Lett, 416 B.R. 780, 788 (S.D. Ala. 2009), aff'd sub nom. Alabama Dep't of Econ. & Cmty. Affs. v. Lett, 368 F. App'x 975 (11th Cir. 2010).

However, an equitable remedy may only be employed to further the goals and structure of the Code and cannot be used "to disregard unambiguous statutory language." In re Lundeen, 2024 WL 3965900, at *11 (B.A.P. 6th Cir. Aug. 28, 2024) (citation omitted). In other words, §105 should be invoked sparingly, with discretion, and "honed in light of the facts of the case, applicable precedent and appropriate policy." In re Fraley, 247 B.R. 417, 422 (Bankr. N.D. Ohio 2000); see also In re Borczyk, 458 B.R. 468, 472 (Bankr. N.D. Ill. 2011).

### C. Split in Case Law

Not surprisingly, application of a bankruptcy court's §105 discretion in extending a deadline varies; there is no single line of authority. Some courts, in analyzing circumstances similar to this in which an incorrect bar date was issued or noticed, have held that statutory deadlines may be extended. E.g., In re Isaacman, 26 F.3d 629, 632 (6th Cir. 1994) (late filed complaint should be allowed to proceed where second, incorrect notice was issued by mail); In re Themy, 6 F.3d 688, 690 (10th Cir. 1993) ("Although the provisions of Rules 4004 and 4007 are strictly enforced, courts have almost uniformly allowed an out-of-time filing when the creditor relies upon a bankruptcy court notice setting an incorrect deadline"); In re Anwiler, 958 F.2d at 929 (late filed complaint allowed where second, incorrect notice sent); In re Cortes, 125 B.R.

418, 420 (E.D. Pa. 1991) (reversing Bankruptcy Court dismissal of late filed claim where an incorrect second notice of the bar date was given and noting that the court agrees with the line of cases allowing untimely complaints when the creditor had relied on erroneous information from the clerk's office).

Other courts have strictly enforced the statutory deadline, declining to allow extra time due to a court error or miscommunication. E.g., In re Williamson, 15 F.3d 1037, 1040 (11th Cir. 1994) (dismissing dischargeability complaint as untimely where counsel failed to investigate the actual notice); In re Kearney, 105 B.R. 260, 263 (Bankr. E.D. Pa. 1989) (dismissing as untimely late filed complaint where plaintiff argued that incorrect second notice of deadline merited an extension); In re Duncan, 125 B.R. 247, 249 (Bankr. W.D. Mo. 1991) (holding that due process does not require that movants receive actual notice of the bar date where they had knowledge of the bankruptcy case, even though the clerk's office had provided misinformation over the phone).

## VII. ANALYSIS

### A. Reliance on the Incorrect Bar Date was not Reasonable

The Plaintiffs admit both that their Complaint was filed after the September 23, 2024 deadline imposed by the Rules and that they did not seek an extension prior to this deadline. Their position is framed not as a factual or legal argument but as an equitable one: the Court should grant the Plaintiffs an extension under its §105 powers due to the incorrect deadline stated on the docket. Because the language of the Rules is not discretionary the Plaintiffs must appeal to a sense of fairness. In re Borczyk, 458 B.R. at 471. The official bankruptcy docket incorrectly states in the upper right-hand corner that November 23, 2024 is the deadline for filing

8

nondischargeability causes of action; the Adversary Complaint was filed the day before this (incorrect) deadline expired.

In arguing that equity dictates an extension of this deadline, the Plaintiffs point, *inter alia*, to In re Perkins, 271 B.R. 607, 613 (B.A.P. 8th Cir. 2002), a case with similar facts, in which the clerk's office listed (on the case file website) an incorrect, second deadline for creditors to object to dischargeability. Creditor's counsel was also informed of the later, incorrect deadline when he called the clerk's office. The Appellate Panel reversed the Bankruptcy Court's dismissal of the complaint as untimely, holding that equity demanded that the deadline be extended when the creditor was misled by court issued documents and by the court staff.  The Perkins Court stated:

> if the bankruptcy court erroneously sets a second bar date for the filing of complaints to determine the dischargeability of a debt and if a creditor, reasonably relying on that second date, files a complaint before the expiration of the second bar date, the bankruptcy court should exercise its equitable powers and permit the complaint to proceed. To hold otherwise, we believe, would create an unjust result because parties are entitled to rely on information issued by bankruptcy courts....

In re Perkins, 271 B.R. at 613 (citing In re Anwiler, 958 F.2d 925).  The relevant question there - and here - is whether the creditor's reliance on (mis)information is reasonable.  See also In re Demos, 57 F.3d 1037, 1039-40 (11th Cir. 1995).  The Perkins court determined that the reliance was reasonable, particularly in light of the facts that a form "Order Deferring Discharge" was entered which also provided the later bar date, the date was communicated by the chapter 7 trustee, and the clerk's office orally confirmed the later date.

The facts presented in the matter at hand, however, are distinguishable and, therefore, I reach a different conclusion. Reliance by the Plaintiffs on the incorrect November 23, 2024 deadline was not reasonable for at least three (3) reasons.

First, there is no question that the Plaintiffs received timely notice of the correct bar date. The Plaintiffs played an active and attentive role in this bankruptcy case from the date of the filing, which is not surprising given the substantial pre-petition debt owed to them by the Debtor and the ongoing litigation between the parties. Because each of the Plaintiffs was listed on the Matrix,[1] filed by the Debtor contemporaneously with the bankruptcy petition, they received Official Form 309A, which is transmitted by the clerk's office to each party on the Matrix. See doc. # 5 in the main case (the "309A Notice"). The 309A Notice clearly informs of *both* the July 24, 2024 meeting of creditors (attended by counsel for the Plaintiffs) *and* the September 23, 2024 deadline for filing objections to nondischargeability (the Form helpfully instructs: "file by the deadline to object to discharge or to challenge whether certain debts are dischargeable"). On June 28, 2024, some 26 days before the §341 meeting of creditors, the 309A Notice was mailed to creditors, including the Plaintiffs. Doc. #6 in the main case. On August 24, 2024, the Plaintiffs were also provided prompt notice of the Consent Order between the trustees and the Debtor. Doc. #'s 19, 21 in the main case.

Second, and critical to an analysis pursuant to Rule 2002, the Plaintiffs did not actually receive "notice" of the incorrect bar date. The wrong information sits quietly at the top of the docket. The Plaintiffs received no order from the Court or form from the clerk's office telling them that the bar date was changed. They did not call the clerk's office or speak to the trustee for clarification. A review of the individual docket entries and orders reveals no updates to the September 23rd deadline. Rather, the Plaintiffs glanced at the top heading of the docket at some point, ignoring all other notices and legal parameters described above, and apparently independently concluded that the more favorable—though inaccurate—information was correct.

---

[1] The Plaintiffs are also listed as unsecured creditors on schedule E/F.

10

The fact that the Plaintiffs were not notified of the incorrect deadline both distinguishes this case from the line of cases which allow an extension of the bar date, e.g., In re Anwiler, 958 F.2d at 929, and belies the argument that they were affirmatively and unfairly misled.

Third, and related to the fact that unreasonable reliance is not an excuse, the Plaintiffs maintained a duty to investigate the relevant deadlines. The Plaintiffs' counsel attended the §341 meeting and should have calculated the correct deadline accordingly. Knowledge of the relevant deadlines prescribed by the Code and Rules are ground rules, not optional guidelines, for asserting one's rights in this federal court. The Eleventh Circuit, confronted with an argument that missing the objection to discharge deadline was reasonable given the lack of complete information from the clerk's office, enforced the deadline, finding that the creditor "had actual notice of the bankruptcy proceeding" and was therefore "on notice of . . . the requirements of Rule 4007." In re Williamson, 15 F.3d 1037, 1039 (11th Cir. 1994).

The Plaintiffs point out that the parties discussed an extension of the deadline to object to discharge at the §341 meeting and that at that time "the language was still being finalized." Response at 8. The implication is that the deadline should be relaxed because the timeline was not clear. Yet the agreement became clear via the Consent Order, which specified that the extension only applied to the chapter 7 and U.S. trustees.[2] Further, if the Plaintiffs were not sure of the deadline they should have reviewed the language of the Consent Order, independently calculated the applicable due date, and erred on the side of caution by filing the complaint prior to the earlier deadline. The Plaintiffs cannot *ex post* rely on relief granted exclusively to the chapter 7 trustee and U.S. trustee. In re Canape, 2021 WL 5508509, at *4 (Bankr. N.D.N.Y.

---

[2] I acknowledge that the Consent Order cites to §523 of the Code (in addition to §727), a provision which allows individual debts to be excluded from discharge by creditors and is not a tool employed by a trustee. However, the fact that the Order includes surplusage does not negate the clear language that the relief only applies to the U.S. and chapter 7 trustees.

11

Nov. 24, 2021) (holding that a creditor could not rely on court orders extending the deadline to object to discharge when those orders "specify the parties included in the extensions, the UST and Trustee.").

In sum, the extreme relief of relaxing a deadline prescribed by the Code and Rules pursuant to the Court's §105 equitable powers is not appropriate here, where the Plaintiffs failure to comply with the deadline was not the result of reasonable reliance.

### B.  Balancing the Prejudices

My decision rests on an analysis of whether the equities of this matter dictate a post-hoc extension of the deadline to file objections to the Debtor's discharge. Though I determine that such an extension is not warranted, I acknowledge that the Plaintiffs' equitable argument is not without appeal; the case docket plainly lists the incorrect date of November 23, 2024 as the deadline for objecting to discharge with no indication that this deadline only applies to certain parties. Shouldn't Plaintiffs' counsel be able to rely on court issued information? Shouldn't the court honor the incorrect deadline as a repercussion for the error? I have seriously considered these counterarguments.

Courts allowing an extension due to an internal court error generally point to the unfairness of a different result. See, e.g., In re Leet, 274 B.R. 695, 699 (B.A.P. 6th Cir. 2002) (courts should be concerned with accusations that they "derailed justice" and should use their power to correct their own mistakes); In re Anwiler, 958 F.2d at 929 (the Debtor should bear the loss; he "had greater incentive to examine and correct the notice"); In re Cortes, 125 B.R. 418, 421 (E.D. Pa. 1991) (citation omitted) (a bar date is "too critical a facet of the Chapter 7 process to allow the deadline to slip by silently or erroneously").

Yet this potential unfairness must be weighed against the prejudice the Debtor would endure by having the deadline extended due to an administrative error over which he had no control. The Code's short and strict timeframe in which a creditor may object to discharge reflects an important purpose of chapter 7, namely, providing an expeditious process and corresponding fresh start to debtors. "Rule 4007(c) evinces a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge. Also, this fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the proceedings." In re Dunlap, 217 F.3d 311, 315 (5th Cir. 2000) (cleaned up) (quoting Neeley v. Murchison, 815 F.2d 345, 346 (5th Cir. 1987). The Debtor's reliance on this structure is necessary, reasonable, and anticipated.

The dilemma presented means either the Debtor will not be able to rely on the predetermined deadlines clearly imposed by the Code and Rules or the Plaintiffs will not be able to rely on a court pronouncement of the relevant deadline. Neither of these is a good outcome. In determining that the greater harm will result from allowing the deadline to be extended, I find that the Debtor's reliance on the known and prescribed timeline for his fresh start is more compelling that the Plaintiff's unreasonable reliance on a plainly incorrect deadline.

### C.  Can the Complaint be Dismissed Based on the Face of the Complaint

Finally, Plaintiff's argument that the Motion should be denied because the lateness is not apparent from the face of the Complaint is easily rejected. The premise of this argument is that because the Complaint states that the deadline for objections to be filed was extended to November 23, 2024, the limitations defense is not "reasonably clear" from the face of the pleading. Response at 13. While it is true that the limitations defense must be apparent from

13

initial filing, Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002), it is also true that "[i]n deciding whether an affirmative defense is clear from the complaint itself, a court may consider documents incorporated by the complaint." In re Tri-State Telecommunications, Inc., 2012 WL 4904537, at *6 (Bankr. E.D. Pa. Oct. 15, 2012); see also In re Randall, 358 B.R. 145, 170 (Bankr. E.D. Pa. 2006).

In considering both the language of the Consent Order (extending the deadline only with regard to specific parties) and the case docket showing the date of the first meeting of creditors, I can conclude that the deadline for the Plaintiffs to file a cause of action for nondischargeability was September 23, 2024. The conclusory statement to the contrary in the Plaintiffs' Complaint is incorrect and misleading. The Plaintiffs cannot rely on their own unsupported conclusion to squeak past a motion to dismiss.

I also note that this argument—asking the Court to allow this Adversary Proceeding to proceed to expensive and time-consuming discovery because there is an error stated in the Complaint of which the Court is well aware—is at least inefficient and at most frivolous.

## VIII. CONCLUSION

Upon a careful review of the facts of this matter and the strict statutory deadlines imposed by the Code, I find that the circumstances here do not justify use of my §105 authority. The statutory deadline will therefore be imposed and the Motion to Dismiss granted with prejudice.

I recognize that this decision means that the substantial debt owed by the Debtor will be discharged without an opportunity for the Plaintiffs to argue the merits of their

nondischargeability cause of action.  This unfortunate result reflects the necessary reality that failure to comply with procedural rules can and does affect a party's substantive rights.

**Date: April 23, 2025**

*/s/ Patricia M. Mayer*

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**